**A. W. HUTCHINGS, Appellant,**

v.

**REPUBLIC SUPPLY COMPANY, Appellee.**

No. 13012.

Court of Civil Appeals of Texas.
Galveston.

Oct. 18, 1956.

Rehearing Denied Nov. 15, 1956.

J. M. Deavenport, Dallas, for appellant.

Vinson, Elkins, Weems & Searls and Leroy Jeffers and J. M. Hopper, Houston, for appellee.

HAMBLEN, Chief Justice.

This is a suit upon two promissory notes. Appellant pleaded the four year statute of

limitation defensively. In reply to plea of limitation, appellee filed a supplemental petition alleging that the suit was filed within four years after the accrual of the cause of action and that plaintiff exercised due diligence in procuring service of citation upon the defendant. Appellee further alleged in such supplemental petition that the defendant had been absent from the State of Texas for extended periods of time which should, under the provisions of art. 5537, Vernon's Ann.Civ.St., be deducted from the four year period limited by the statute of limitation. Trial before the District Court of Harris County, sitting without a jury, resulted in a judgment for appellee for the amount of the notes, interest, and attorney's fees.

The facts are in large measure undisputed and may be summarized as follows:

On December 2, 1947, appellant, being then a citizen and resident of the State of Mississippi, executed and delivered to the appellee the two notes sued upon, one for the sum of $127,982.16 and one for the sum of $18,087.71, both being payable to the order of appellee six months after date. On January 5th or 6th, 1948, appellant became a resident of Texas, establishing his residence in the City of Houston which he maintained until approximately July 1, 1948. Prior to January 5th or 6th, 1948, appellant had never resided in Texas. On or about July 1, 1948, appellant ceased to be a resident of Texas and moved to the State of Indiana. He continued to be a nonresident of Texas and to maintain his residence in Indiana until June 4th or 5th, 1951, when he returned to Texas and established his residence in Dallas, where he has resided continuously since. Appellee instituted this suit on May 24, 1952. Citation was promptly issued but was not served on appellant until September 22, 1952, more than ninety days from the time of issuance. Alias citation was issued on May 7, 1953, was served on appellant on May 21, 1953, and filed with the District Clerk of Harris County on May 26, 1953.

In response to appellant's request, the trial court made findings of fact and conclusions of law. In addition to incorporating the foregoing undisputed facts, the court found in Finding of Fact No. 11 that the plaintiff intended at all times after this suit was filed on May 24, 1952, that service of citation on the defendant should be completed and that said suit should be prosecuted to judgment. The court concluded that, as a matter of law, appellee's cause of action is not barred by the four year statute of limitation, art. 5527, V.A.T.S., for two reasons: (1) suit was filed before the expiration of four years from the date the notes became due and payable, and plaintiff exercised ordinary diligence in procuring the issuance and service of citation on the defendant, and (2) since the defendant was a resident of Texas when on June 2, 1948, the notes became due and payable, the 712 days during which defendant was absent from the state between that date and the date of service of alias citation upon him on May 21, 1953, should not, under the provisions of art. 5537, V.A.T.S., be taken as part of the time limited under art. 5527, but should be excluded from such time, and when so excluded, less than four years elapsed between the date when said notes became due and payable and the date on which alias citation was served on defendant.

Appellant's five points of error are directed to the asserted lack of support for the trial court's Finding of Fact No. 11 and to the asserted error in Conclusions of Law Nos. 1 and 2, above set forth. We overrule such points.

Because we feel that it is so conclusively determinative of this appeal, we consider first the applicability of art. 5537 to the undisputed facts of this case. Article 5537 is as follows:

"If any person against whom there shall be cause of action shall be without the limits of this State at the time of the accruing of such action, or at any time during which the same might

have been maintained, the person entitled to such action shall be at liberty to bring the same against such person after his return to the State and the time of such person's absence shall not be accounted or taken as a part of the time limited by any provision of this title."

In view of the plain import of the language of this statute, it is difficult for this Court to conceive of any reasonable construction which might be placed on that language which would prevent its direct applicability to the facts of this case as concluded by the trial court. The notes sued upon became due and payable on June 2, 1948. Between that date and the date of service of alias citation, appellant was admittedly absent from Texas a total of 712 days. When that time is excluded, the alias citation was served well within the four year limitation period.

Appellant however, in unquestionable sincerity, contends that under the construction that has been placed on art. 5537, it has no application to this case. Factually his contention rests upon the undisputed fact that appellant was a nonresident of Texas at the time the obligation forming the basis of the suit came into existence, and had never been a resident of this state prior to that time. For legal support he relies upon the decision of our Supreme Court in the case of Stone v. Phillips, 142 Tex. 216, 176 S.W.2d 932, 934, addressing his argument to the following language employed by the Court in its opinion: "If the defendant has never been in the State and is absent from the State at the time the obligation forming the basis of the suit arises or comes into existence, then the running of limitation is not suspended by the statute in question; * * *." We are of the opinion that a proper construction of the opinion in Stone v. Phillips lends no support to appellant's contention, despite the apparent support in the out-of-context quotation above.

In the very early case of Snoddy v. Cage, 5 Tex. 106, our Supreme Court held that the statute here in question was not applicable against a defendant who entered this state for the first time subsequent to the accrual of a cause of action against him. The Court reasoned that never having been previously in this state such a defendant could not "return" to the state within the meaning of the statute. The limitations of that decision and those wherein its philosophy was applied were later discussed by the Supreme Court in the case of Wilson v. Daggett, 88 Tex. 375, 31 S.W. 618, 619. In refusing to extend that philosophy to the extent of making the statute applicable only to a defendant who had "returned" to this state, the Court used the following language: "We think, in the construction placed upon the section in the earlier decisions of the court, the word has already been given all the effect which can be justified by sound reason; and we are unwilling to push this etymological construction further. The effect of these decisions is to hold that as to actions of debt the provisions contained in article 3216 do not apply as to those who were nonresidents of the state both when the debt was created and when the cause of action accrued; * * *."

Since the decision of Wilson v. Daggett it has been consistently held that in actions for debt art. 5537 has no application to a defendant who was a nonresident of the state both when the debt was created and when the cause of action thereon accrued. Appellee concedes that to be the law today.

In Stone v. Phillips, supra, the Court was confronted with a situation wherein the defendant was a resident of Texas at the time the notes sued upon were executed, but later removed from Texas and was absent at the time the notes became due and payable. The question before the Court was whether the time of such absence should be accounted or taken as a part of the time

limited by art. 5527. The Court held that it should not, or, in other words, held that the period of absence would be excluded from the four year period of the limitation statute. In the opinion appears the language which we have quoted above, upon which appellant so strongly relies. He interprets the decision as holding that in suits for debt, presence of the defendant in this state at the time the debt was created is necessary in order to entitle the creditor to the saving provisions of art. 5537.

In the present case the situation may be said to be, in certain respects, directly opposite to that which obtained in Stone v. Phillips, supra, in that here the defendant in debt was a nonresident at, and at all times prior to, the time the notes were executed, but was a resident at the time they became due and payable.

Appellant says that under the express language employed in Stone v. Phillips, supra, presence in the state at the time the notes were executed is a prerequisite to the applicability of art. 5537.

Appellant states, and the appellee does not deny, that the precise factual situation here involved has never before been passed upon by an appellate court in this state. However, an examination of the cases wherein art. 5537 has been discussed, following the decision of Wilson v. Daggett, will disclose none wherein it has been held that the statute is inapplicable to a situation wherein the defendant debtor is present in this state when the obligation became due and payable. On the other hand, the language employed in the cases could appropriately have been employed only in the light of an assumption that presence of the defendant debtor at that time makes the statute applicable. For instance, in Hart v. Winsett, 141 Tex. 312, 171 S.W. 2d 853, 856, the following language is employed:

"The evidence shows that the debtor was in the State at the time the cause of action accrued, and that she left the State thereafter and had not been within the State as much as four years at the time Hart sued to foreclose his lien on the land. Consequently Hart's cause of action was not barred by limitation.

"It is not material whether the debtor left the State with the intention of remaining permanently, or whether she intended to return. Article 5537 is applicable in either event. Ayres v. Henderson, 9 Tex. 539; 28 Tex.Jur. 232. * * *."

When the entire opinion is read in Stone v. Phillips, supra, the conclusion is inescapable that it was written in the light of such an assumption. The portion of the opinion upon which appellant relies, which we have quoted above, must be read in connection with the language which, as part of the same sentence, immediately follows, i. e., "* * * but if he is actually in the State or is domiciled here at the time the obligation arises, the running of limitation is suspended during his subsequent absence, *even though he is not actually in the State at* the date when the cause of action becomes a present, enforcible demand in the sense that the obligation has matured for suit." The emphasis is our own. We employ it because, in our opinion, the use of the words by the Supreme Court indicates clearly, if it does not compel, the conclusion that that Court presupposed the applicability of the statute if the defendant is actually in the state at the date when the cause of action becomes a present enforcible demand. In Wilson v. Daggett, supra, the Supreme Court expressly limited the rule previously announced in Snoddy v. Cage, supra, to those instances wherein the defendant is a nonresident of the state both when the debt was created and when the cause of action accrued. We hold that since the appellant here was admittedly a resident of Texas when appellee's cause of action accrued, art. 5537 is applicable, even though he was a nonresident at the time the obligation forming the

basis of the suit arose, and had not previously been a resident of this state.

The conclusions which we have stated clearly require an affirmance of the judgment appealed from. However, in order that the Supreme Court, in the event it grants a writ of error, may have all of the points which appellant presents here, before it, we pass upon appellant's remaining points of error.

This suit was filed May 24, 1952, nine days before the expiration of four years after the notes became due and payable. Citation was issued by the District Clerk on May 26, 1952, and was delivered by appellee's attorneys to H. A. McDannald, a representative of appellee on May 27, 1952. On August 12, 1952, McDannald mailed the citation to the sheriff of Dallas County, with an accompanying letter in the following words:

"Sheriff of Dallas County
"Dallas, Texas

"Dear Sir:

"We are enclosing a citation in Cause No. 1–405–987 entitled Republic Supply Company vs. A. W. Hutchings.
"You will note that this citation was issued on May 26, 1952 and that there remains very little time in which to get service.
"In the event you are unable to get service, please mark accordingly and return to Republic Supply Company, P. O. Box 259, Houston, Texas. The reason for the delay in sending this to you was that Mr. Hutchings is rather hard to catch and it was the writer's intention on his first trip to Dallas to go with someone from your office and identify him.

"Very truly yours,
"Republic Supply Company
"/s/ H. A. McDannald
"H. A. McDannald
"Credit Department"

This citation was served on appellant on September 22, 1952, obviously too late to confer jurisdiction on the trial court. Rule 101, Texas Rules of Civil Procedure.

Alias citation was issued by the District Clerk in Harris County on May 7, 1953, and served on the appellant on May 21, 1953, three days less than one year after the suit was filed.

The appellant testified that he resided at 5310 Stonegate, Dallas, Texas; that he had a telephone listed in the name of A. W. Hutchings at that address; and that he was physically present in the City of Dallas from May 24, 1952, to August 13, 1952. Appellee's original petition alleged that appellant resided at 5310 Stonegate Road, Dallas, Dallas County, Texas.

McDannald testified that he knew the person who had signed the notes only as A. W. Hutchings and that the person in Dallas County who was sued was named in a Dun report which he had obtained on him as Alex W. Hutchings. McDannald stated that he had never known the person, who had signed the notes, as Alex, and that he was not certain whether the person being sued was the same person who had signed the notes. He testified that it appeared that the only way to identify the defendant definitely as the person who had executed the notes was for McDannald to go to Dallas and to attempt to accompany a deputy sheriff with the citation to identify the defendant, since neither the Dallas representative of Republic Supply Company nor any one else in his organization was acquainted with Hutchings and able to identify him. McDannald instructed the Company's Dallas representative to endeavor to make the identification through inquiry with other supply companies and such other investigation as he might be able to make, and that he, McDannald, was seeking to get his affairs in such shape that he could go to Dallas personally to make the identification if it was not made in the meantime. After mailing the citation

to the sheriff in Dallas, McDannald went to Dallas in person in an attempt to locate and identify the defendant. At the sheriff's office he was informed that the citation was in the hands of a deputy sheriff, who was not available. McDannald pointed out at the sheriff's office that only some ten days or two weeks remained of the ninety day period in which the citation could be served, and urged the sheriff to make every effort to complete service within the ninety day period. The record is silent with respect to the period of time intervening between the return of the original citation and the issuance of the alias citation.

Appellant's points Nos. 1 to 3, inclusive, are directed to the lack of support for the trial court's Finding of Fact No. 11 hereinabove mentioned, and the error in the Conclusion that appellee exercised ordinary diligence in procuring the issuance and service of citation on the appellant. He has cited numerous authorities which strongly support his points. Since we have already determined that this case must be affirmed because of the applicability of art. 5537, and in view of our stated reason for passing upon appellant's remaining points, we see no reason to extend this opinion by undertaking to reconcile appellant's authorities with the decisions which we feel are controlling here.

Appellee has cited Long-Bell Lumber Co. v. Bynum, Tex.Com.App., 138 Tex. 267, 158 S.W.2d 290, 292. The opinion was written by Judge Hickman, now Chief Justice of the Supreme Court, and was adopted by the Supreme Court. The suit was on a note, and the sole defense relied on was the four year statute of limitation. On appeal the sole question was whether, as a matter of law, plaintiff failed to exercise reasonable diligence in procuring service of citation on the defendant after filing suit. The note sued on was due and payable on December 31, 1932. Suit was filed on December 29, 1936, two days before the note would have become barred by the statute. Citation was immediately issued in Potter County, where the suit was filed, and was returned unexecuted. Alias citation was issued to Bexar County on March 30, 1938, and returned unexecuted. Pluries citation was issued to Dallas County on January 11, 1939, and was served upon defendant. The opinion sets forth the evidence bearing upon the question of diligence in more detail than need be employed here. We consider the following excerpt from the opinion to be of particular significance: "In the Fall of 1938 plaintiff's manager met defendant on the streets in Dallas and learned that defendant was still residing there. Upon his return to Amarillo the manager advised plaintiff's attorneys of this conversation, but citation was not issued to Dallas County until January 11, 1939. Mr. H. M. Kimbrough, one of plaintiff's attorneys, explained the delay in not sooner causing citation to be issued to that county in this language:

"'* * * I think that I had some information about Bynum's being in Dallas along in October or November, is my recollection, when Mr. Munday came back from Dallas or Fort Worth and I talked with him about this matter, and he said Bynum told him that he was in Dallas. I made some check on that; I think we called Homer Wheeler's office to make some check to verify that, because I had had so much trouble I didn't want to send another citation down there unless I was reasonably sure it would be served, and this other citation, I want to say this: there was some delay because I think it would have taken some time to have served him; I understood he was still traveling about the country, and my reason that I didn't issue it for the term of court that I probably should had it issued for, was because I thought it would take more than 10 or 15 days to serve it, and that was about all the time I would have for the preceding term of court, and that is about by best recollection; * * *.'"

The court's disposition of the question presented is reflected by the following quotation:

Viewing the evidence as a whole we think it presented a fact question in the trial court as to whether the statute of limitation was tolled by the filing of the suit. Obviously the evidence would have supported a fact finding that the plaintiff had not exercised proper diligence, but it cannot be said, as a matter of law, that it required such holding. Plaintiff exercised some diligence, and whether or not that was sufficient was a question of fact. The closest question is whether or not proper diligence was exercised by the attorneys after receiving information in the Fall of 1938 that defendant was residing in Dallas. However, the trial court was in better position than we are to know whether the attorney's conclusion that it was probably too late to procure service for the next term of court was based upon a reasonable ground. We cannot say, as a matter of law, that it was not."

■ We think that in so far as appellant asserts any lack of diligence on the part of appellee in securing or failing to secure service of the original citation, the finding of the trial court must be upheld under the authority of Long-Bell Lumber Co. v. Bynum, supra. Clearly appellee exercised some diligence and in line with the cited case we feel compelled to hold that whether or not that was sufficient is a question of fact.

Conversely, however, we think that in so far as appellant asserts lack of diligence on the part of appellee in securing the issuance and service of alias citation, the cited case lends no support to appellee's position but on the other hand tends to support appellant's contention. It will be noted that Judge Hickman uses the following language: "The closest question is whether or not proper diligence was exer-

cised by the attorneys after receiving information in the Fall of 1938 that defendant was residing in Dallas." The court held, however, that the reasonableness of the attorney's explanation of the delay was a question of fact to be determined by the trial court. We have already noted that in this case the record is silent with respect to the period of time intervening between the return of the original citation and the issuance of the alias citation. Since no explanation of the delay was offered, its reasonableness cannot be the subject of factual determination.

■ However, there does exist a material factual distinction between this case and the case of Long-Bell Lumber Company v. Bynum, supra. In that case the first notice of any kind which the defendant had of the pendency of a suit against him was the service of the pluries citation. To the contrary, in this case the service of the original citation, though insufficient under Rule 101, T.R.C.P., to confer jurisdiction over the person of appellant, did effectually notify him of the pendency of a suit against him. We feel that this last mentioned fact is of material legal significance and requires that we uphold the trial court's finding of ordinary diligence under a line of authorities wherein analogous facts have been considered.

In O'Quinn v. Scott, Tex.Civ.App., 251 S.W.2d 168, 171, writ refused, the following language is used:

"The purpose of statutes of limitation is not to permit debtors to escape their just obligations, but is rather 'to prevent demands originally invalid or which had been discharged from being enforced after such a lapse of time as would probably make it impossible for defendants to procure the evidence by which a just defense could be established.' Hanley v. Oil Capital Broadcasting Ass'n, 141 Tex. 243, 171 S.W. 2d 864, 865, pt. 1."

In that case the plaintiff filed suit against three defendants as partners within the period of the applicable limitation statute. Four months after the expiration of the limitation period the plaintiff filed an amended petition, naming a corporation, of which the three original defendants were the sole officers, and directors, as the defendant. To this pleading the corporation filed a plea of limitation. The court held that the true purpose of the limitation statute had been subserved by the filing of the original petition and the service of citation thereon, in that the corporate defendant was thereby given notice of the pendency of a suit against it. The court concluded that the running of the limitation statute was tolled by the filing of the original petition and the service of citation thereon.

The same philosophy was applied in the case of Hallaway v. Thompson, 148 Tex. 471, 226 S.W.2d 816, 820. In that case the plaintiff brought an action against the defendant as trustee of one railroad company within the period of the statute of limitation when, as a matter of fact, the action should have been brought against the defendant as trustee for an entirely different railroad company. When citation was served on the defendant in the correct capacity, the limitation period had expired. The Supreme Court, nevertheless, held that the statute was tolled by the first citation, saying in part:

"We think that the purpose of the statutes of limitation, as amended by Article 5539b, would be given proper effect by holding that in the present case the plaintiff's action was commenced with the filing of his original petition. The defendant, Guy A. Thompson, was then notified of the nature of the plaintiff's claim and the occurrence or transaction out of which it arose. * * * While the plaintiff made a mistake in his original petition as to the capacity in which the defendant was acting at that particular time,

the defendant was at all times fully cognizant of the facts and could not have been misled as to the basis of the plaintiff's suit by the allegations of the original petition, nor was he placed at any disadvantage in obtaining relevant evidence to defend the suit. Under these conditions, we think it would be a misapplication of the statutes of limitation to hold that the plaintiff's action was barred."

◼ We think that the rationale of these two authoritative decisions has direct application to the present case. We feel that the service of original citation upon appellant gave him notice of the demand being made against him and that he could not have been misled by, nor placed at any disadvantage in obtaining relevant evidence to defend the suit because of, the delay on the part of the appellee in securing the issuance and service of alias citation. In line with the authorities discussed, we think it would be a misapplication of the statute of limitation to hold the appellee's action was barred.

Appellant's Point No. 5 is in the following language:

"5. The findings of fact and the judgment of the court are contrary to the great weight and overwhelming preponderance of the evidence and does not conform to nor is it properly supported thereby."

◼ In oral argument he says that by this point he has invoked the fact reviewing jurisdiction of this Court, and urges that the court's Finding No. 11 is so against the overwhelming weight and preponderance of the evidence as to require a reversal of the judgment and a remand of the case. We are of the opinion that the point as stated is probably insufficient to invoke our jurisdiction for such purpose; however, we have examined the entire record and conclude that the point should in any event be overruled. The only factual

issue in the case is that incorporated in the trial court's Finding of Fact No. 11 and we hold, not only that the evidence which we have heretofore set forth in this opinion supports such finding, but that we cannot say that the finding is against the overwhelming weight and preponderance of the evidence.

The judgment is affirmed.

CODY, J., not sitting.