In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00055-CR

                                                ______________________________

 

 

                                         JOHN BOZEMAN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 349th
Judicial District Court

                                                           Houston County, Texas

                                                         Trial Court
No. 08CR-042

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            The original
judgment of this Court affirmed the conviction of John Bozeman.  The Texas Court of Criminal Appeals granted
Bozeman’s petition for discretionary review, vacated the judgment of this
Court, and remanded for further action in light of Geick v. State, 349 S.W.3d 542 (Tex. Crim. App. 2011), decided
subsequent to Bozeman v. State, 340
S.W.3d 515 (Tex. App.—Texarkana 2011), judgment
vacated, No. PD-0839-11, 2011 WL
5375124 (Tex. Crim. App. Nov. 9, 2011). This opinion is issued in accordance
with the mandate of the Texas Court of Criminal Appeals in Bozeman v. State, No. PD-0839-11, 2011 WL 5375124 (Tex. Crim. App.
Nov. 9, 2011).

             Bozeman was indicted on the charge of theft by
deception[1]for
the theft of nine pieces of jewelry from Cathy Hobson.  After a bench trial, Bozeman was found guilty
and was sentenced to eighteen months’ confinement in the Texas Department of
Criminal Justice—State Jail Division.[2]  On appeal, Bozeman claims that (1) the
judgment is not supported by constitutionally sufficient evidence; and (2) the
judgment is not supported by appropriate evidence of the value of the items
alleged to have been stolen.  Because the
verdict is not supported by legally sufficient evidence, we reverse the judgment
of the trial court and render a judgment of acquittal.

I.          BACKGROUND

 

            Bozeman
and Hobson went to school together and have known each other most of their
lives.  In July 2006, when Hobson was
preparing to move from a small house to a larger house next door, Bozeman
offered the use of his truck and trailer to assist in the move.  The moving process commenced on Monday July
17.[3]  Hobson testified that on that date, Bozeman
moved both of her jewelry boxes from the smaller house to the upstairs bedroom
of the larger house.  Bozeman was aware
of the location of the jewelry boxes because Hobson directed him to place them
in a drawer next to her bed.  At that
time, there was nothing missing from either of the jewelry boxes.[4]  

            On the
second day of the move, Tuesday July 18, Bozeman asked Hobson to take her son
to a baby-sitter, as Bozeman could not get any work done with the child underfoot.  Hobson agreed, and took her son to a friend’s
house a few blocks away.  Hobson returned
approximately forty-five minutes later, only to find that Bozeman was
gone.  Baffled by his disappearance,
Hobson called Bozeman on his cell phone only to be told that he was at Lowe’s
in Palestine purchasing a lawn mower for his father.[5]

            When
Hobson’s husband arrived home from work on the evening of the 18th, Hobson
showed him what had been accomplished at their prospective new home.  When Hobson noticed that an antique music box
and an antique adding machine[6]
were both missing, she immediately went upstairs to check her jewelry
boxes.  Hobson discovered that some of
her jewelry was missing and filed a report with the local police that same
evening.  Hobson never questioned Bozeman
about the missing items of jewelry, as she suspected he was responsible for
their disappearance.  

            Approximately
three weeks later, when Hobson learned Bozeman was having work done on one of
his rings at Charles Dickens’ jewelry store in Palestine, she paid a visit to
Mr. Dickens.  After having been presented
with a copy of the police report, Dickens agreed to show Hobson several items
of jewelry Bozeman brought to the store. 
Hobson identified nine of those items of jewelry as belonging to
her.  At trial, Dickens testified that
Bozeman brought those nine items of jewelry into his store on July 19, 2006,
the day after Hobson’s jewelry was reported missing.   Bozeman denies any involvement in the
disappearance of Hobson’s jewelry; the jewelry boxes were dusted for
fingerprints, but no discernible prints were obtained. 

II.        ANALYSIS

 

            A.        The Evidence is Legally Sufficient to
Support the Finding of Unlawful            

                        Appropriation

 

            In his first
point of error, Bozeman generally claims the evidence is legally insufficient
to support the trial court’s verdict.  In
reviewing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the jury’s verdict to determine whether any
rational jury could have found the essential elements of the charged
offense.  Brooks v. State, 323 S.W.3d 893, 902, n.19 (Tex. Crim. App. 2010)
(4-1-4 decision) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)); Hartsfield
v. State, 305 S.W.3d 859, 863 (Tex. App.––Texarkana 2010, pet. ref’d) (citing Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007)).  Our rigorous
legal sufficiency review focuses on the quality of the evidence presented.  Brooks,
323 S.W.3d at 917–18 (Cochran, J., concurring). 
We examine legal sufficiency under the direction of the Brooks opinion, while giving deference
to the responsibility of the jury “to fairly resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.”  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19).

        Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[7]  The hypothetically correct jury charge “sets
out the law, is authorized by the indictment, does not unnecessarily increase
the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.”  Id. 


            The
indictment states, in pertinent part, that Bozeman:

 

[O]n or about July 18, 2006[,] and before presentment of
this Indictment, in said County and State, did then and there:  unlawfully appropriate, by acquiring or
otherwise exercising control over property, to-wit:  Men’s Yellow/gold 3 stone wedding band,
small yellow solitaire ring, Men’s nugget solitaire ring, 3.7 mm wedding band,
Ladies 3 stone with sapphire accent ring, lady’s 2 tone engagement ring, w/3
stones, Yellow gold coin ring w/3 stones, 5 oz gold eagle coin, Gold watch
chain and faub [sic], of the value of $1,500 or more but less than
$20,000, from Cathy Hobson, the owner thereof, without the effective
consent of the owner, namely, by deception, and with intent to deprive
the owner of the property.

 

            In making an analysis under the
hypothetically correct jury charge, we find that the indictment required the State
to prove that:  (1) John Bozeman (2) on
or about July 18, 2006, (3) in Houston County, Texas, (4) unlawfully
appropriated, by acquiring or exercising control over the listed items, (5)
having a value of $1500.00 or more but less than $20,000.00, (6) from Hobson
(7) by deception and (8) with the intent to deprive Hobson of the property.

            Here,
Bozeman claims that the State’s evidence is deficient in proving, beyond a
reasonable doubt, that Bozeman (1) unlawfully appropriated the property in
question, and (2) deceived Hobson.[8]  We initially examine the evidence of unlawful
appropriation of Hobson’s jewelry by Bozeman. 
Bozeman points to his own testimony, which accounts for his acquisition
of the jewelry in question from sources other than Hobson.  First, Bozeman maintains that he purchased two
of the items of jewelry at a pawn shop in Crockett.  The record is not clear as to which two items
Bozeman claims were so purchased.  John
Smock, the owner of the pawn shop in Crockett, testified that he has known
Bozeman for fifteen years and that Bozeman has purchased several pieces of
jewelry from Smock over the years, similar to the rings depicted in State’s
exhibit seventeen (photograph of the nine items of jewelry located in Dickens’
jewelry store).  Next, Bozeman testified
that the coin he is accused of stealing from Hobson (actually a .5 ounce coin
rather than a 5-ounce coin) was given to him by his father, Charles
Bozeman.  Charles Bozeman testified that
he purchased a 2000 Liberty gold coin for Bozeman in March 2001.  Bozeman testified that the wedding band
(otherwise not identified) was given to him by his father as well when his father
outgrew it.  

            Bozeman
contends that the remaining five items of jewelry he was convicted of stealing
from Hobson were items he purchased from a fellow by the name of Dennis
Denby.  Bozeman maintains that Denby sold
the items for Otis Johnson, who needed the money to pay his light bill. Denby
testified that in early August 2006, he introduced Bozeman to a fellow that had
some jewelry to sell.   Denby took the
man (identified by Bozeman as Johnson) to Bozeman, who purchased the
jewelry.  Bozeman introduced a sales
receipt at trial for these five items, dated August 7, 2006.  According to Bozeman, Denby signed the
receipt “Dennis Denby sold for Otis Johnson” on the date of the
transaction.  Denby testified that
Bozeman approached him a few days after the sale and asked him to sign the
receipt.

            Bozeman
maintains on appeal that the weakness of the State’s evidence, in conjunction
with the evidence accounting for Bozeman’s legal acquisition of the jewelry,
can lead only to the conclusion that the evidence failed to establish Bozeman’s
guilt beyond a reasonable doubt.  He
complains that the State’s evidence is largely circumstantial and that it
failed to eliminate any other reasonable alternative, such as the sale of the
jewelry to Bozeman by a third party.[9]  The lack of direct evidence is not
dispositive of the issue of Bozeman’s guilt. 
Circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor, and circumstantial evidence alone can be
sufficient to establish guilt.  Hooper, 214 S.W.3d at 13.   Furthermore, the standard of review on appeal
is the same for both direct and circumstantial evidence cases.  Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  

             As a reviewing court, it is our job to view
the evidence in the light most favorable to the verdict to determine whether
any rational fact-finder could have found the essential elements of the offense
beyond a reasonable doubt.  Further, we
defer to the finder of fact to resolve conflicts in the evidence and to
determine the credibility of that evidence. 
Here, the trial court was free to believe Hobson’s testimony and to
discount the testimony of Bozeman and Denby. 
Given the fact that Dickens testified that Bozeman brought all nine
pieces of jewelry into his store on July 19, and the receipt for the sale of
five items of jewelry shown to have been purchased by Bozeman was signed on
August 7, it appears that this is exactly what the trial court did.  In viewing the evidence in the light most
favorable to the trial court’s verdict, a rational fact-finder could have found
that Bozeman unlawfully appropriated jewelry belonging to Hobson.

            B.        The
Evidence Is Legally Insufficient to Support the Finding that the                                        Unlawful Appropriation Was Accomplished
by Deception

 

            Next, still
complaining of the legal sufficiency of the evidence, Bozeman claims that no
evidence was introduced showing any property belonging to Hobson was obtained
by means of deception.  Bozeman contends
that because the indictment alleged only one means of committing theft—by
deception—the State was required to prove that particular means.  Bozeman argues that because there is no
evidence of deception, the evidence is legally insufficient to sustain his
conviction.  The State maintains that it
proved theft by deception as alleged in the indictment.  The issues, therefore, are (1) whether the
State was required to prove deception, where deception was alleged in the
indictment, and if so, (2) whether the State proved deception.[10]

            The issue of
whether the State was required to prove deception where deception was alleged
in the indictment was the subject of the Texas Court of Criminal Appeals’
opinion in Geick v. State.  In that case, Geick was indicted for theft by
deception of a bulldozer.  The jury
charge allowed for a conviction without limiting the manner in which the theft
was committed, and Geick was found guilty “as charged in the indictment.”  Geick,
349 S.W.3d at 544.  

            On
appeal, the Fourteenth Court of Appeals acquitted Geick because there was no
evidence of deception.  The Texas Court
of Criminal Appeals affirmed, holding that “when a statute lays out several
alternative methods of committing the offense, and the indictment alleges only
one of those methods, ‘the law as authorized by the indictment’ is limited to
the method specified in the indictment.” 
Id. at 545 (citing Gollihar v. State, 46 S.W.3d 243, 254–55
(Tex. Crim. App. 2001)).   In so holding,
the high court rejected the State’s argument that the term “deception” as a
means of committing theft was merely a definition, rather than an element of
the offense, and therefore should not be a part of the hypothetically correct
jury charge.  In this case, therefore,
the State was required to prove deception since it alleged deception in the
indictment.[11] 

             The testimony here indicates Bozeman
volunteered his services to help Hobson move her belongings from one house to
the other.  Hobson testified that she never
asked Bozeman to help with the move.  After
the move commenced, Bozeman told Hobson that he could not work with her son
there because he was in the way.  He
asked Hobson to take her son to a baby-sitter, which she did.  By reason of this request, Bozeman gained the
opportunity to steal Hobson’s jewelry, which he had placed in a drawer next to
Hobson’s bed on the previous day.  

            When Hobson
returned from taking her son to the baby-sitter, Bozeman was gone.  Bozeman did not tell Hobson he would be leaving,
and it was her understanding that Bozeman intended to help her move that day—hence
the request to take her son to the baby-sitter. 
The State argues that Bozeman had no intention of working all day, but
was merely creating an opportunity to carry out the theft of Hobson’s jewelry,
which constitutes legally sufficient evidence to prove theft by deception.  We disagree.

            A person
commits theft “if he unlawfully appropriates property with intent to deprive
the owner of property.”  Tex. Penal Code Ann. § 31.03(a); Riley v. State, 312 S.W.3d 673, 675 (Tex.
App.—Houston [1st Dist.] 2009, pet. ref’d). 
The statute defines three ways in which an appropriation is unlawful,
including “without the owner’s effective consent.”  Tex.
Penal Code Ann. § 31.03(b) (West Supp. 2011); King v. State, 174 S.W.3d 796, 809 (Tex. App.—Corpus Christi 2005,
pet. ref’d). Consent is not effective if induced by deception or coercion.  Tex.
Penal Code Ann. §
31.01(3)(A) (West Supp. 2011).  The Texas
Penal Code defines “deception” as, among other things, “creating or confirming
by words or conduct a false impression of law or fact that is likely to affect
the judgment of another in the transaction, and that the actor does not believe
to be true.”  Tex. Penal Code Ann. § 31.01(1)(A) (West Supp. 2011 ).[12]
 “When relevant at all in a prosecution
for theft, however, ‘deception’ goes to ‘circumstances surrounding the conduct’
of the accused, in that deception operates to render otherwise apparent consent
‘ineffective.’”  Cheney v. State, 755 S.W.2d 123, 129 (Tex. Crim. App. 1988); Skillern v. State, 890 S.W.2d 849, 871
(Tex. App.—Austin 1994, pet. ref’d).  In
other words, when a defendant is charged with theft by deception, consent must
be induced by deception.  In such a
circumstance, the consent given is ineffective.[13]  

            Here,
Bozeman never obtained Hobson’s consent, effective or otherwise, to appropriate
her jewelry.  Bozeman may have acted
deceptively in “tricking” Hobson into leaving the premises, but this was solely
for the purpose of affording Bozeman the opportunity to unlawfully acquire
control over the items of jewelry he deposited at Charles Dickens’ jewelry
store in Palestine the following day. 
Bozeman’s deception cannot be said to have in any way induced Hobson
into consenting to hand her jewelry over to him.   In viewing the evidence of deception in the
light most favorable to the trial court’s verdict, a rational fact-finder could
not have found that Bozeman unlawfully appropriated Hobson’s jewelry by means
of obtaining consent by deception. 
Accordingly, we are compelled to conclude that the evidence is legally
insufficient to support a finding of theft by deception.[14]  We sustain Bozeman’s first point of
error.  

            Because we
find the evidence is legally insufficient to support the verdict, we do not
address Bozeman’s second point of error, complaining of the sufficiency of the
evidence to support the jewelry’s value. 


III.       CONCLUSION         

 

            We reverse the judgment of the trial
court and render a judgment of acquittal because there is legally insufficient
evidence of theft by deception.

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          January
11, 2012         

Date Decided:             January
12, 2012

 

Do Not Publish











[1]Tex. Penal Code Ann. § 31.03 (West
Supp. 2011).

 





[2]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann.
§ 73.001 (West 2005).  We are unaware of
any conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex.
R. App. P. 41.3.

 





[3]Others
helped with the move; Hobson hired Consuelo Venezuela and Christopher Lopez to
help pack.  Bozeman testified that Donald
Davis accompanied him to Hobson’s house to assist with the move.  

 





[4]Bozeman
claims that he never saw a jewelry box while assisting with the move.

 





[5]According
to Bozeman, Hobson was aware of his appointment with the manager at Lowe’s on
the 18th.  

 





[6]Bozeman
was not charged with the theft of these items. 





[7]Even
though no jury charge was given, we nevertheless employ this analysis to
determine the legal sufficiency of the evidence.  Malik, 953 S.W.2d at 240 (the Malik
test applies to nonjury or bench trials).

 





[8]In
his second point of error, Bozeman complains of the sufficiency of proof
regarding the value of the items he was convicted of stealing.  





[9]In
Geesa v. State, 820 S.W.2d 154, 159
(Tex. Crim. App. 1991), overruled on
other grounds by Paulson v. State,
28 S.W.3d 570 (Tex. Crim. App. 2000), the Texas Court of Criminal Appeals
expressly disavowed the “reasonable hypothesis analytical construct” for legal
sufficiency reviews.  





[10]In
our original opinion, we found that based on the hypothetically correct jury
charge, the evidence was sufficient to prove Bozeman committed the offense of
theft.  Bozeman, 340 S.W.3d at 523.





[11]Unlike
Geick, the instant case was tried to
the court.  





[12]Deception
is further defined as “failing to correct a false impression of law or fact
that is likely to affect the judgment of another in the transaction, that the
actor previously created or confirmed by words or conduct, and that the actor
does not now believe to be true.”  Tex. Penal Code Ann. § 31.01(1)(B)
(West Supp. 2011).

 





[13]Effective
consent includes “consent by a person legally authorized to act for the owner.  Consent is not effective if: (A) induced by
deception or coercion . . . .” Tex.
Penal Code Ann. § 31.01(3)(A).

 





[14]Had
the indictment in this case merely alleged Bozeman unlawfully appropriated
property with the intent to deprive the owner of property, such allegation
would be “the law authorized by the indictment” for purposes of the
hypothetically correct jury charge.  See Geick, 349 S.W.3d at 546.  In that case, it would have been unnecessary
to prove the element of deception and the evidence would have then been legally
sufficient to support the verdict.  








#160;    De-Kaizered made no assertion of these issues before its motion for rehearing, and
the matter cannot be raised at this point in the proceedings. "Rehearing is not an
opportunity to test alternative arguments after finding other arguments unsuccessful." ICM
Mortgage Corp. v. Jacob, 902 S.W.2d 527, 535 (Tex. App.‒El Paso 1994, writ denied) (op.
on reh'g); see Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d
880, 885 (Tex. 2001); McGuire v. Fed. Deposit Ins. Corp., 561 S.W.2d 213, 216 (Tex. Civ.
App.‒Houston [1st Dist.] 1977, no writ) (op. on reh'g). If De-Kaizered wanted to contest the
elements of substantial performance, other than material breach, the arguments should
have been raised in its original submission and not in its motion for rehearing. Therefore,
the issue of whether Continental failed to plead and prove all the elements of substantial
performance is not before this Court and we will not address it.
          We overrule the motions for rehearing. 
 
 
                                                                Donald R. Ross
                                                                Justice
 
Date:  October 22, 2003